DELAMERE BROWN v. LEVI MORRILL AND JESSE MORRILL.

*Surveys—Monuments—Courses and distances—Location of section corner.*

1. The original monuments established by the government surveyor to mark section corners must control the courses and distances indicated by the field-notes.

2. The contest in this case was over the location of a section line. And it is held that there was some testimony to go to the jury fixing the disputed section corner at the point claimed by the defendants, which testimony is set forth in the opinion.

Error to St. Clair. (Canfield, J.) Argued March 2, 1892. Decided March 18, 1892.

Trover. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Phillips & Jenks,* for appellant, contended:

1. The rule that monuments control courses and distances is not inflexible. The only reason for the rule is that the former are less liable to mistake, and, if no mistake can reasonably be supposed to have been made, no reason remains for the application of the rule; citing *Davis v. Rainsford,* 17 Mass. 210.

2. It appears from the evidence of the surveyor Randall, and from the rules of the government in surveying, that posts were used by surveyors only at section and quarter-section corners. The corner at C is fully established and recognized by the parties as the section corner of sections 12 and 13 of the township west, and the field-notes indicate that the section line in dispute intersects the meridian line 15.9 chains south of that point; so that this point of intersection, being at a certain distance in a given course from a certain monument, is as fixed and certain a place as the monument itself, and is no more lost or uncertain than if a stone monument had been erected in 1839 by the government surveyors at the point B, and were there to-day; and the testimony of defendants' witnesses cannot

change it, even if they agreed, instead of disagreeing, as they do at present, on important points; citing *Pickett v. Nelson,* 79 Wis. 9.

.3. If the trees in the locality of C had been government witness trees, they would have been marked " R. 1 E., T. 26 N., S. 7, B. T.;" citing *Bruckner's Lessee v. Lawrence,* 1 Doug. 19; *Moore v. People,* 2 Id. 420; *McCoy v. Galloway,* 3 Ohio, 282; *Pickett v. Nelson,* 79 Wis. 9.

*Avery Bros. & Walsh,* of counsel, for appellant.

*Stevens & Merriam,* for defendants.

LONG, J. Plaintiff brought suit in trover against defendants in the St. Clair circuit for timber claimed to have been taken and converted by them from land in Oscoda county. The cause was tried before a jury, and defendants had verdict and judgment. At the time of the claimed conversion the land belonged to Currier & Halleck, who afterwards, and before this suit was commenced, sold the land to the plaintiff, and assigned their right of action.

Upon the trial, practically the sole ground of contention between the parties was upon the location of the section line between sections 7 and 18, town 26 N., range 1 E. The defendants owned the N. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, and the S. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$, of section 18; and the plaintiff owned the S. W. $\frac{1}{4}$ of section 7, and the N. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 18. The map on following page illustrates the situation.

The east corner of sections 7 and 18, at A in the diagram, was undisputed, as was also the east corner of sections 12 and 13 of the town west, at C in the diagram. Plaintiff claimed that the section line between sections 7 and 18 ran, as shown on the diagram, from A to B, while the defendants claimed that the line ran as shown by the dotted line from A to C.

The plaintiff, to make his case, introduced the field-

notes of the original survey, which show that, running west from the south-east corner of section 7, the west boundary of the section was intersected 15.9 chains south of the section line between sections 12 and 13, at the point B; and that at that point a post was set, with two

witness trees, both aspen, one north and east, at a distance of 7 feet, which would be on section 7, and one south and east, 10 feet distant, which would be on section 18. It is not claimed by the plaintiff that these witness trees were found, but that aspens were found dead and decayed at the place indicated by the field notes. There was no contention but that the corner

post between sections 12 and 13 is located at point C; that the witness trees marking that corner are still standing. The defendants' contention is that that post not only marks the corner of sections 12 and 13, but also marks the corner between sections 7 and 18 of township 26 N., range 1 E.; so that the controversy is narrowed down to the one question, whether there was any evidence to go to the jury tending to establish the post at point C as the one fixed by the government survey establishing the corner between sections 7 and 18 at that point.

The court instructed the jury as follows:

"If there are visible monuments, as posts, established by the evidence, they will control courses and distances, and are the best evidence as to the location of the line originally run; that is, while the field-notes are supposed and presumed to be correct in their calls for courses and distances, yet if the line as indicated by such fixed monuments, ascertained and established by the evidence to your satisfaction, differs from the line called for by the courses and distances in the field-notes, the latter must yield to the former in determining the true line."

The court further instructed the jury—

"Monuments always control courses and distances. This is an inflexible rule; but you must be satisfied they are the original monuments, and those so called for by the original survey. All that a surveyor can do is to direct attention towards the ascertainment of the actual location of the original land-marks. * * * The field-notes state the line to be 15.9 chains below the south-east corner of section 12, and the north-east corner of section 13, of the township next west of the meridian line; and the question is, was it established there, or was it actually located opposite this corner [between sections 12 and 13], so that the line was continuous across the meridian line? * * * If you are satisfied from the evidence that the corner was actually established at a different place than called for in the field-notes, that should govern; and this question you are to determine

from the evidence of the surveyor and the other experts, and all the evidence given in the case and the facts shown by the testimony."

Plaintiff excepts to this portion of the charge, and contends that "this rule is not inflexible; that, other things being equal, it may properly be said that monuments control courses and distances, yet the rule should not be stated as invariable, and not subject to any modification;" and insists that his third request to charge should have been given, which, in substance, was that the section line between sections 7 and 18 is at the point B indicated on the diagram.

The defendants offered testimony of witnesses who had been engaged for years in looking land, and were familiar with the woods and the government surveys, and they testified that the corner of sections 7 and 18 of the township east of the meridian line, and 12 and 13 west of it, was a common corner, fixed by the same post, and witnessed by four witness trees, having upon them the usual government marks indicating that the post was identical for the four corners. They also testified that it was plain to be seen that the line ran directly across the meridian, and that, leading east, it was a well-defined line, bearing upon it evidence of having been blazed through by the government surveyors, and that upon such line was a sight tree, notched upon both sides, such as they had only found upon section lines run by the government. There was some contention as to whether the witness trees to the post at point C on the diagram bore the principal government mark, indicating the corner post between sections 7 and 18, and also as to whether the witness trees were of the same specie as indicated by the government survey. It is shown, however, by the testimony, that the corner south of there,

91 MICH—3.

that is, between sections 18 and 19 in the township east, and 13 and 24 in the township west, is a common corner for all four corners of these sections, and that the line between these sections extends directly east and west across the meridian. The testimony also tends to show that the point C, which defendants claim to be the true corner, is just 80 chains north of that point. At point B, where the plaintiff contends the corner is located, nothing was found upon the ground that would indicate that there was ever a government line located there, nor was there anything anywhere upon the line as run by the surveyor tending to show that the government had ever surveyed a line where the plaintiff insists it should be established, and, in fact, by following the field-notes the survey falls short 5 chains in reaching the meridian line.

It is claimed on the part of the plaintiff that the rules by which the surveyors were governed, under the act of Congress of 1805, produced double corners upon all the exterior lines of the townships, and that, therefore, it is to be presumed that the post found at point C on the diagram, being the corner between sections 12 and 13, was not intended as a corner post for sections 7 and 18. It appears, however, from the testimony of Mr. Randall, a surveyor introduced as a witness by the plaintiff, that the post set just one mile south of that point was witnessed by four trees, plainly indicating it as the common corner of those four sections, so that it would seem that the surveyor in making this survey used but one post to establish the corners of the four sections.

We think this some evidence, in connection with the other facts and circumstances, to go to the jury, from which they might determine that the one post set at point C was intended to mark the corners of the four

sections, 7 and 18 and 12 and 13. The court was not in error, therefore, in directing the attention of the jury to this monument, and stating to them that, if they found from the testimony that this monument established by the government surveyors is the true corner of sections 7 and 18, it should control the courses and distances indicated by the field-notes.

It is claimed on the part of the plaintiff that the evidence did not tend to show that the witness trees to this post at point C bore the true government mark, as at the roots of the tree the letters "B. F. T." did not appear. The witnesses testified that the trees bore the mark, "T. 26 N., 1 E., S. 7." It is also claimed that one of these trees was not of the species mentioned in the field-notes. There would be great force in the contention that there was no testimony from which the jury would be justified in finding this to be the true corner of the sections if the question rested wholly upon these trees, as the true witness trees, to mark this as the corner of sections 7 and 18; but the jury had a right to consider the other facts and circumstances tending to establish this point as the true corner of these sections. The location of the corner post one mile south, the one post marking the four corners, together with the fact of the blazed line eastward from point C and the sight tree upon that line, added great weight to the other evidence in establishing point C as the true corner. The fact, also, that the plaintiff's testimony showed that the point claimed by him as the true corner could not be established by any witness tree and other evidence that the corner had ever been located there, gives strength to the defendants' claim that that never was established as the corner of the section, but that point C was the true corner.

We are satisfied that there was some evidence to go to

the jury fixing point C as the true corner, as an established monument, and the court was not in error in saying that, if the jury found that to be a fact, it must control courses and distances.

We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.